BAYLES v. PLUMB.

(Supreme Court, Appellate Division, Second Department.   December 30, 1910.)

HIGHWAYS (§ 184*)—COLLISIONS BETWEEN VEHICLES—ACTION—EVIDENCE.
   In an action for injuries to plaintiff's automobile in a collision with
   defendant's automobile on a highway, evidence *held* insufficient to sup-
   port a judgment for plaintiff.
   [Ed. Note.—For other cases, see Highways, Cent. Dig. § 472;  Dec. Dig.
   § 184.*]
   Hirschberg, P. J., dissenting.

Appeal from Trial Term, Suffolk County.
Action by Thomas N. Bayles against J. Ives Plumb.  Judgment
for plaintiff, and defendant appeals.  Reversed, and new trial granted.
Argued before HIRSCHBERG, P. J., and WOODWARD, CARR,
JENKS, and THOMAS, JJ.

George H. Furman, for appellant.
Livingston Smith, for respondent.

WOODWARD, J.  The plaintiff, accompanied by a young lady,
was driving a Maxwell runabout, weighing about 1,250 pounds, on
the afternoon of August 8, 1909.  He was traveling from Huntington
to Islip, in the county of Suffolk, and had chosen to drive over Park
avenue to Jericho Turnpike.  Park avenue appears to be a narrow
driveway between overhanging underbrush and trees, running south-
erly to its junction with Jericho Turnpike, which it intersects without
crossing.  Jericho Turnpike is a through thoroughfare, running east
and west, and appears to be largely traveled.  At the point where
Park avenue intersects, the traveled way separates to the east and
west, leaving a small green patch of land between the ways, and on
the Sunday afternoon in question the plaintiff claims to have come
from the north to this intersection, to have made a detour to the right
and crossed over Jericho Turnpike to the south side, and turned east
upon the right-hand side of the traveled way, when he was met head
on by the defendant's touring car weighing about 3,500 pounds, car-
rying four men; the car striking his runabout just in front of the
dashboard, upon the hood, throwing the car bodily a distance of 20
feet by actual measurement, doing damage to the car for the recov-
ery of which this action is brought.  The plaintiff claims to have
been running over Park avenue at the rate of 20 to 25 miles an hour,
and to have slowed down on approaching the Jericho Turnpike to
about 10 or 12 miles an hour, and to have blown his horn at some
time before reaching the main highway; but just how far away he
was at this time does not appear.
The undisputed evidence is that the plaintiff did not throw out his
clutch or apply his brakes on discovering the approach of the defend-
ant, but kept on toward the south side of the turnpike and to the
east.  The claim of the plaintiff is that the defendant was running
his heavy touring car at the rate of 40 to 50 miles an hour, and that

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

he struck the plaintiff's little car just forward of the dashboard upon the hood, throwing the little car a distance of 20 feet to the west and landing it in the bushes by the roadside upon its wheels, without, so far as appears, any injury to the wheels or any serious disturbance of the frame or other important parts of the car, for the claim for damages is only $270, and this court might almost take judicial notice of the fact that an injury of $270 does not go much beyond the lamps, hood, mud guard, and other incidental parts of an automobile, which were the parts shown to have been specially damaged. The mere statement of the plaintiff's case, if undisputed, would tax credulity to the danger point. A touring car weighing 3,500 pounds, loaded with four men, and running at the rate of 40 miles an hour, striking a 1,200-pound runabout head on at the point claimed by the plaintiff, must either have completely demolished the light car, or at least, in lifting it and carrying it a distance of 20 feet, have crushed the front wheel under the mud guard and have bent the frame all out of shape and sprung both of the axles; but the evidence shows that the two front lamps were crushed backward, not sideways, that the mud guard was bent, and the hood more or less injured, while all of the wheels stood up, and the car was landed in the brush without further important injuries, standing upright and on all four wheels. It is unthinkable that the accident could have happened in the manner claimed by the plaintiff. Every physical fact known to the common intelligence of man disputes the testimony, and courts of justice are not bound to do violence to intelligence and known laws of physics, because some interested party testifies to a given state of facts.

The claim of the defendant is that he had been running east on Jericho Turnpike at the rate of about 18 miles an hour; that just before the collision he had reduced the speed of his car to 12 or 14 miles an hour for the purpose of changing his gears to a lower rate of speed to pass over a sandy incline; that he was not running more than 14 miles an hour when he met the plaintiff coming out from Park avenue; that at the time the plaintiff first emerged from the underbrush which covered the greater part of Park avenue and appeared in the Jericho Turnpike, coming along the left-hand or easterly fork of Park avenue, the cars were very close together, the plaintiff coming head on toward him; that in this situation, realizing that he could not pass to the right, defendant turned his car to the left or south side of the road, believing that the plaintiff would turn his car to the left also and thus enable both to pass without injury. The defendant's theory of the accident is that the plaintiff, confronted by this situation, without making any effort to stop, kept on his way, suddenly turning to the right also, so that the plaintiff's car struck the defendant's car on the right side near the tonneau door, and that the force of the impact turned the course of the plaintiff's car southwesterly along the line of the defendant's car, landing them both in the bushes at the south side of the roadway. This theory is supported by the fact that the plaintiff's front lamps were crushed backward and the mud guard bent back, while the defendant's car shows

absolutely no injuries on the front of the car, but severe bruises along the right-hand side, including injury to the mud guards and frame. The defendant testifies that he threw out his clutch and applied his foot brake as soon as he saw the danger, but was prevented from applying the emergency brake by reason of the fact that the road was sandy, and it was necessary to use both hands on the steering wheel. This version of the accident, supported by the testimony of the defendant's guests, is also in some degree of harmony with physical law. The big car, running at 14 miles an hour in a sandy road, with the clutch thrown out and the foot brake on, would stop within a few feet—probably within 30 to 50 feet. If struck by the plaintiff's lighter car about midway, head on, the tendency would be to veer the lighter car around to the general direction of the heavier car, and especially as the plaintiff had already turned sharply to the right, and the contact thus produced would carry both to the southerly side of the highway into the bushes, just as was done. This view of the case does not impose upon our credulity. It is something that could occur—something that could not very well help occurring, generally speaking, under similar circumstances—and, having the support of testimony, it should be accepted instead of the highly improbable theory advanced by the plaintiff, whom we may charitably suppose to have been too much concerned to really know what did take place. The weight of the evidence is clearly with the defendant upon the important issue in this controversy, and the judgment ought not to be permitted to stand.

In the view which we take of the case, it is not necessary to determine the questions raised by the exceptions to the reception and rejection of testimony, for it is not to be presumed that the court, upon a new trial, will fail in the discharge of its duty. It may be said, however, that it is difficult to reconcile the rulings in this case as it now appears, and that, as a general proposition, the defendant ought to have as good an opportunity to explain as the plaintiff has to establish any material fact in a case.

We think the ends of justice will be served by reversing the judgment and granting a new trial; costs to abide the event.

JENKS, J., concurs. THOMAS, J., concurs in separate memorandum. CARR, J., concurs in result. HIRSCHBERG, P. J., dissents.

THOMAS, J. From the plaintiff's case the following facts appear: Plaintiff's automobile going south on Park avenue collided with defendant's automobile going west on Jericho Turnpike at the intersection of such highways. The plaintiff's view towards the east was so obscured that he could not see the defendant's car until he opened out on Jericho Turnpike, when he saw it "very close by," perhaps a hundred feet away, going 40 or 50 miles per hour. Plaintiff's car was going between 10 and 15 miles per hour. Where the avenue enters the turnpike, a beaten road goes to the left, or east, and another to the right, or west, and the plaintiff took the right branch for the purpose of rounding up to the left or towards the east. Be-

fore he turned to the left, and while he was to the right of the intersection of the two roads, the defendant's car collided with his car on the left-hand side in front of the dashboard. So the case is that the plaintiff in his car, with such suddenness as would arise from a speed of from 10 to 15 miles per hour, appeared upon a highway to cross it, and while seeming, by taking the right or westerly branch, to intend to go westward, actually traversed in part the turnpike and occupied some part of it at an angle thereto approximating a right angle, without knowing what was coming on the turnpike until entry thereof was made. The plaintiff's car was traveling from 14 to 21 feet per second, and the question is whether the driver, having previously sounded his horn, was under the circumstances negligent per se in thrusting his car upon and across a highway at that rate of speed. What happened helps the conclusion. The plaintiff, precluded from seeing until he came to the point where the turnpike opened, saw approaching him a car 100 feet away, coming at the rate of 40 or 50 miles per hour. It would be upon him in less than two seconds, if he entered the turnpike. Had it been going no faster than his own car, it was only from 5 to 7 seconds away. He was from a branch breaking into a main road, and was obliged to make a curve to get straightened out on the thoroughfare. He attempted to make two curves, first to the right, intending to round again to the left to gain the right or south side of the turnpike so as to head east, and all the time regardless of the car, whatever its speed, that was approaching him. It was a mere hurried dash from a byway into the main road and an obstruction of it pending his contemplated maneuver. He did not get around before the other car collided, and it was rash for him to make the effort—rash, not because the other car was at excessive speed, but because he came suddenly into the highway and attempted to make a curve around the approaching car. Why did he not stop? Was it because he was at such speed that there was not time after he discovered the other car? He did not try to stop. He probably was so far committed to his maneuver that, whatever was in the way, stopping was impracticable. His car was not under control, and he did not attempt to control it by stopping. It would seem that a person approaching the outlet of the road, and not able to see what was approaching its mouth until the terminus was reached, would before coming out of his concealment look to see what was in his way, peering, if need be, to discover how the place he was about to enter was occupied. But the plaintiff swept in, and, making as if to go west, swung around as if to go east in the very face of an automobile less than two seconds away, coming at a speed that shocks credulity and outrages every propriety in the use of a public highway. The plaintiff was not prudent in his own behalf, and so his accusation of the defendant, justified though it be by the latter's negligence, does not avail.

The judgment should be reversed, and a new trial granted; costs to abide the event.